UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON

| | | |
|---|---|---|
| **DEVON PETWAY** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO. 5:21-cv-312 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| **OHIO PIZZA DELIVERY, INC.** | : | |
| c/o Statutory Agent | : | **Jury Demand Endorsed Hereon** |
| CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, Ohio 43219 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Devon Petway ("Plaintiff") files her Complaint against Defendant Papa John's USA, Inc. ("Defendant") for Defendant's discrimination against Plaintiff during her employment, seeking all available relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112"). The following allegations are based on personal knowledge as to the Plaintiff's own conduct. Plaintiff hereby states as follows:

**I.       JURISDICTION AND VENUE**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.; the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112"); and 28 U.S.C. § 1331.

2. This Court's jurisdiction in the matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in the Northern District of Ohio, a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, and Defendant conducts substantial business in the Northern District of Ohio.

## II. PARTIES

4. Plaintiff is a natural person residing in Summit County, Ohio.

5. Defendant Papa John's USA, Inc, is a for-profit corporation registered to do business in the State of Ohio and conducts business in Summit County, Ohio.

6. Plaintiff is an employee as defined by Title VII and R.C. Chapter 4112.

7. Defendant Papa John's USA, Inc. is an employer as defined by Title VII and R.C. Chapter 4112.

## III. FACTUAL BACKGROUND

8. Plaintiff, a person designated as male at birth, was hired by Defendant in or around November 2018 at the West Market location in Akron, Ohio.

9. Plaintiff was hired in the position of Delivery Driver.

10. In this position, Plaintiff was responsible for using her own vehicle to deliver customers' orders to their designated locations.

11. Since beginning her employment in or around November 2018, several of Plaintiff's co-workers and her managers were aware of her transition from a male to a female.

12. On November 21, 2018, one of Plaintiff's managers, Juan Oropez ("Manager Oropez"), attempted to initiate a physical altercation with Plaintiff by bumping up against her with his stomach and chest and then grabbing a pizza spatula which he threatened to hit her with. Another employee had to physically remove the spatula from Manager Oropez's hand. During this incident, Manager Oropez was cursing at Plaintiff, was telling Plaintiff that he was going to beat her ass, and was trying to demean and insult her by calling her a "cross-dresser," "drag queen," and "faggot." Manager Oropez said that no one at Papa John's, including the managers, wants Plaintiff working there, and that since Manager Oropez was leaving for another job soon anyway, he would tell Plaintiff how "everyone really feels" about her.

13. Plaintiff called the police due to Manager Oropez's actions that evening.

14. Instead of disciplining or reprimanding Manager Oropez for his conduct, Plaintiff was immediately terminated and/or suspended following this incident and she was told not to come to work her scheduled shift on November 23, 2018 for her own "safety" and to prevent any further issues. Plaintiff stated that she did not think it was fair that she had to miss work when she was the one that was cornered and attacked. The manager expressed her condolences to Plaintiff, stated she was only relaying the message from the regional manager, and that the situation was "crazy" and "nobody should be treated like that."

15. Manager Oropez's last day of employment with Defendant was November 23, 2018. A few days later, Plaintiff was contacted by Regional Manager Dustin Welling ("RM Welling"), and she was rehired on November 26, 2018.

16. Shortly thereafter, a new manager, Brandon Newman ("Manager Brandon") came onboard; however, the degrading comments about Plaintiff being transgendered did not cease. For instance, Manager Brandon and another manager would frequently insult Plaintiff by saying she

was simply "dressing up" as a woman, they would call her a cross-dresser and drag queen, and they would purposefully try to trip her.

17. Manager Brandon did not feel comfortable working with Plaintiff, who was a transgendered female, so Brandon attempted to get Plaintiff to quit or otherwise find cause to terminate her employment by engaging in a multitude of adverse actions and conduct. For example, Manager Brandon changed Plaintiff's work schedule without her knowledge to get her to miss shifts. Manager Brandon refused to give Plaintiff a raise. Manager Brandon would not approve Plaintiff's vacation requests. Manager Brandon would take Plaintiff off one of her scheduled shifts for the week with no explanation and simply say that he gave it to someone else. Manager Brandon allowed all other employees to have free meals and even bring pizzas home to their families, but he required Plaintiff to purchase any food she ate.

18. Further, Plaintiff expressed her desire to RM Welling that she wanted to be promoted to a manager position; however, since conveying her interest in becoming a manager at the West Market location, at least three (3) managers left their employment from this location, but none of those three (3) managers were replaced by Plaintiff, who each time was passed over for a promotion in favor of a cisgender individual.

19. On March 19, 2020, Plaintiff, who was in an emotional state due to the harassment she was experiencing, left a hand-written note on Manager Brandon's desk stating that she could no longer continue working at Papa John's due to the unfair and hostile work environment. However, after Plaintiff had 15 to 20 minutes to calm down and talk to her family member, Plaintiff returned to Manage Brandon's office and retrieved the note. Plaintiff worked her entire shift on March 19, 2020 past midnight, she worked her March 23, 2019 shift, and she worked her March 24, 2019 shift.

20. Unbeknownst to Plaintiff at that time, another manager saw the note, made an electronic copy of the note, and sent the note to Manager Brandon.

21. Approximately a few days later, Plaintiff noticed that she was not scheduled to work the following week, so she went to Operations Partner Tristan Nelson to inquire about the issue. During the meeting, Operations Partner Tristan Nelson casually mentioned that she thought Plaintiff quit. Plaintiff stated that she did not quit, and Operations Partner Tristan Nelson then pulled up a picture of the note Plaintiff had left on Manager Brandon's desk for 15 to 20 minutes.

22. Plaintiff stated that she only wrote the note out of emotion and that she retrieved it and never officially submitted it to Manager Brandon. Further, Manager Brandon, Operations Partner Tristan Nelson, nor any other manager ever informed Plaintiff they had a picture of the note or questioned her why she wrote it and then removed it. Instead, they purposefully remained quiet about the matter.

23. After Plaintiff stated she did not quit, Operations Partner Tristan Nelson informed Plaintiff that Manager Brandon was not comfortable working with Plaintiff and that he asked that she be transferred to the East Market location.

24. Plaintiff explained that she was not from Akron, Ohio, that she was unfamiliar with the East Market area, and that a transfer would subject her to a hardship so she would prefer not to be transferred. Plaintiff was then told that Manager Brandon had already hired two (2) Delivery Drivers and that Plaintiff would have to transfer locations for this reason anyway, as the West Market location apparently could not sustain employment of all of them itself. RM Welling promised Plaintiff a raise to $9.00 per hour if she voluntarily accepted the transfer.

25. Given the position Defendant put Plaintiff in, she accepted the transfer with the pay increase.

26. However, when Plaintiff reported to her first day on the job at the East Market location, she was handed paperwork stating her hourly rate was going to remain at $8.55 per hour, and not the $9.00 per hour she was promised as a condition to voluntary accept the transfer.

27. Defendant effectively terminated Plaintiff by forcing a transfer on the condition of an increase in pay, then failing to increase Plaintiff's pay while hiring additional drivers at her current location so she could not continue work there.

28. Defendant had actual knowledge

29. Based on Defendant's conduct and actins described herein, Defendant

**COUNT I**
**(Title VII, 42 U.S.C. § 2000e – Sex Discrimination)**

21. All of the preceding paragraphs are realleged as if fully rewritten herein.

22. This claim is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, because Plaintiff was the subject of unlawful sex discrimination when she was harassed, terminated, and unfavorably transferred to another work location because of her sex and her identification as a transgender individual.

23. Plaintiff, a female, is a member of a protected class.

24. Plaintiff suffered an adverse employment action when she was first terminated from her employment with Defendant on or about November 21, 2018 and when Defendant failed to consider or promote Plaintiff to management positions for which she expressed clear interest.

25. Plaintiff was qualified for her position and the management position she sought.

26. Defendant treated Plaintiff less favorably than other similarly situated employees outside of her protected class.

27. Plaintiff's behavior, actions, and/or appearance did not sufficiently conform to Defendant's gender-role expectations of the way a man should behave, look, and/or act.

28. Defendant discriminated against Plaintiff in violation of Title VII, which forbids discrimination on the basis of sex—which includes transgender status.

29. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, exacerbated depression and anxiety, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

30. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT II
### (R.C. 4112.02(A) – Sex Discrimination)

31. All of the preceding paragraphs are realleged as if fully rewritten herein.

32. This claim is brought pursuant to R.C. 4112.02, because Plaintiff was the subject of unlawful sex discrimination and gender stereotyping when she was terminated because of her sex, her gender non-conforming conduct, and her identification as a transgender individual.

33. Plaintiff, a female, is a member of a protected class.

34. Plaintiff suffered an adverse employment action when she was terminated from her employment with Defendant and when Defendant failed to promote Plaintiff for open positions.

35. Plaintiff was qualified for her position.

36. Defendant treated Plaintiff less favorably than other similarly situated employees outside of her protected class.

37. Plaintiff's transition from male to female and her behavior, actions, and/or appearance did not sufficiently conform to Defendant's gender-role expectations of the way a man should behave, look, and/or act.

38. Defendant discriminated against Plaintiff in violation of Ohio law, which forbids discrimination on the basis of sex—to include sex stereotyping and discrimination against individuals for their failure to conform to expected gender-role norms and behavior, and/or because of their identification as a transsexual.

39. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, exacerbated depression and anxiety, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

40. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
**(Title VII – Hostile Work Environment)**

41. All of the preceding paragraphs are realleged as if fully rewritten herein.

42. Defendant engaged in conduct that violates Title VII by subjecting Plaintiff to disparate treatment, harassment, and/or creating of a hostile work environment in the terms and conditions of her employment because of her sex, her gender non-conforming conduct, and her identification as a transgender individual.

43. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

44. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

45. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

46. Plaintiff endured constant discriminatory remarks and disparate treatment from supervisory employees and co-workers. Defendant was aware of these remarks and actions, yet failed to take corrective action.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

48. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT IV
### (R.C. Chapter 4112 – Hostile Work Environment)

49. All of the preceding paragraphs are realleged as if fully rewritten herein.

50. Defendant engaged in conduct that violates R.C. Chapter 4112 by subjecting Plaintiff to disparate treatment, harassment, and/or creating of a hostile work environment in the terms and conditions of her employment because of her sex, her gender non-conforming conduct, and her identification as a transgender individual.

51. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

52. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

53. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

54. Plaintiff endured constant discriminatory remarks and disparate treatment from supervisory employees and co-workers. Defendant was aware of these remarks and actions, yet failed to take corrective action.

55. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

56. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages and punitive damages and all other relief available under this section.

57. At all times material herein, Defendant acted in conscious and/or reckless disregard for Plaintiff's rights, with great probability that its acts and omissions would cause substantial harm to Plaintiff.

WHEREFORE, Plaintiff demands monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, front pay, compensatory damages, emotional distress damages, and punitive damages in an amount to be determined at trial, and any and all other relief that the Court deems just and appropriate.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220

Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman